Jennie HAMPTON and Marvin Vail, Appellants,

v.

CARTER ENTERPRISES, INC., and American Family Mutual Insurance Company, Respondents.

No. WD 66706.

Missouri Court of Appeals, Western District.

Aug. 21, 2007.

Application for Transfer to Supreme Court Denied Sept. 25, 2007.

Application for Transfer Denied Dec. 18, 2007.

James P. Frickleton, Michael C. Rader, Leadwood, KS, for Appellant.

Daniel T. Defeo, Kansas City, Curtis O. Roggow, Overland park, KS, for Respondent.

PAUL M. SPINDEN, Judge.

State Farm Insurance Company accused Jennie Hampton and her brother-in-law,

Marvin Vail, of insurance fraud on the basis of a report by Carter Enterprises, Inc. Hampton and Vail sued Carter Enterprises for intentional infliction of emotional distress [1] and malicious prosecution and obtained a $4 million judgment. They initiated this action against Carter Enterprises and its insurer, American Family Mutual Insurance Company, to collect the judgment. They also charged American Family with bad faith refusal to settle an insurance claim. The circuit court issued summary judgment for American Family, and Hampton and Vail appeal.

Hampton and Vail contend that the circuit court erred in denying their motion for summary judgment and in issuing summary judgment for American Family because the parties are not disputing genuine issues of fact and, as a matter of law, American Family's business insurance policy issued to Carter Enterprises covered intentional infliction of emotional distress and malicious prosecution. We affirm the circuit court's judgment.

This dispute arose from a claim that Hampton made to the insurer of her vehicle, State Farm. Hampton claimed that her vehicle had been stolen and destroyed in a fire in Miami County, Kansas, during December 1997. Suspecting that Hampton's claim was fraudulent, State Farm hired Carter Enterprises to investigate. Carter Enterprises informed State Farm that its investigators had concluded that the vehicle's engine was inoperable before the vehicle was set on fire. Based on this report, State Farm asked Kansas authorities to prosecute Hampton and Vail. Kansas authorities charged Hampton and Vail with conspiracy to commit insurance fraud, but a jury acquitted them after one of Carter Enterprises' investigators admitted

during trial that he had no evidence to support his theory.

On April 23, 2002, Hampton and Vail initiated this action against Carter Enterprises. American Family agreed to defend Carter Enterprises under a reservation of rights agreement, but Carter Enterprises rejected the reservation of rights defense and retained its own attorney. American Family withdrew its defense.

On July 13, 2004, Hampton and Vail entered into an agreement with Carter Enterprises that, if they obtained a judgment or settlement against Carter Enterprises, they would seek satisfaction from Carter Enterprises only to the extent of the insurance coverage provided by American Family. In exchange for this promise, Carter Enterprises agreed not to contest its liability in any future proceedings.

On October 22, 2004, Hampton and Vail dismissed their petition against Carter Enterprises in Jackson County circuit court and refiled it in Cass County circuit court. They asserted claims for malicious prosecution and intentional infliction of emotional distress. Carter Enterprises did not file an answer. After trial, during January 2005, the circuit court entered judgment for Hampton and Vail on both claims and awarded $4 million in damages to them.

On January 25, 2005, Hampton and Vail informed American Family of the judgment by letter and demanded satisfaction. American Family did not pay. On March 9, 2005, Hampton and Vail filed a two-count petition against American Family. Count I asserted an action for equitable garnishment, pursuant to Section 379.200, RSMo 2000, in which they sought satisfaction of the $4 million judgment. Count II asserted an action for bad faith refusal to

---

1. Hampton and Vail denominated their cause of action as the "tort of outrage," but the proper name for the tort is intentional infliction of emotional distress. *Smith v. Standard Oil, Div. of Amoco Oil Co.,* 567 S.W.2d 412, 415 (Mo.App.1978).

settle a claim, pursuant to Section 375.420, RSMo 2000. Both parties filed motions for summary judgment, and, on February 24, 2006, the circuit court denied Hampton's and Vail's motion and entered summary judgment for American Family on both counts.

In reviewing the grant of a summary judgment, we review *de novo. ITT Commercial Finance Corporation v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993).

> The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.... The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* (citations omitted). We may affirm a summary judgment only when the parties are not disputing material facts and the moving party is entitled to judgment as a matter of law. *Id.* at 380.

> When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered.... Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion.... We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

In their first point in this appeal, Hampton and Vail aver that the circuit court erred in denying their motion for summary judgment because, as a matter of law, the policy that American Family issued to Carter Enterprises covered acts of malicious prosecution and infliction of emotional distress. They assert that none of the policy's exclusions applied.

Although neither party raised the issue, we must determine *sua sponte* our jurisdiction to consider the merits of this claim. *In re Care and Treatment of Paul E. Bowles v. State*, 83 S.W.3d 93, 94 (Mo.App.2002). For this court to have jurisdiction, the circuit court must have entered a final judgment—that is, a judgment that disposes of all issues and leaves nothing for future determination. *Id.*

Hampton and Vail are appealing the circuit court's denial of their summary judgment motion. Denial of a summary judgment motion is not a final judgment because it leaves the merits of dispute for future determination. *In re Foreclosure of Liens for Delinquent Land Taxes by Action in rem*, 150 S.W.3d 364, 371 n. 3 (Mo.App.2004). We, therefore, dismiss this point of error.

In their second point, Hampton and Vail claim that the trial court erred in granting American Family's motion for summary judgment because, as a matter of law, the business insurance policy issued by American Family to Carter Enterprises covered the injuries arising from Carter Enterprises' actions. They contend that none of the policy's exclusions applied.

A moving party's right to judgment as a matter of law differs significantly depending on whether or not the moving party is a claimant or a defending party. *Missouri Employers Mutual Insurance Company v. Nichols*, 149 S.W.3d 617, 623 (Mo.App.2004). If the moving party is a defendant:

> [A] *prima facie* case for summary judgment can be established by employ-

ing one or more of three means: (1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense.... Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law.

*Childress Painting and Associates, Inc. v. John Q. Hammons Hotels Two, L.P.,* 106 S.W.3d 558, 561 (Mo.App.2003) (quoting *ITT Commercial Finance,* 854 S.W.2d at 381). To constitute a final, appealable judgment, the moving party must establish that he or she is entitled to judgment as a matter of law as to every theory of recovery pleaded. *Bost v. Clark,* 116 S.W.3d 667, 674 (Mo.App.2003).

In their equitable garnishment action, Hampton and Vail had the burden of proving that they had obtained a judgment against Carter Enterprises, that American Family's insurance policy was in effect when Carter Enterprises committed the intentional infliction of emotional distress and malicious prosecution, and that the policy covered the damages awarded in the judgment against Carter Enterprises. *Wilson v. Traders Insurance Company,* 98 S.W.3d 608, 612 (Mo.App.2003). American Family, however, had the burden of showing that an applicable exclusion in its policy relieved it of liability. *American States Insurance Company v. Herman C. Kempker Construction Company, Inc.,* 71 S.W.3d 232, 235 (Mo.App.2002).

American Family contends that it alleged in its motion for summary judgment undisputed material facts which entitled it to judgment as a matter of law with respect to Hampton's and Vail's alternative theories of intentional infliction of emotional distress and malicious prosecution. American Family also contends that, by showing that it was entitled to judgment as a matter of law as to those theories, it established that it was entitled to judgment as a matter of law as to their claim concerning bad faith refusal to settle because the allegations concerning this claim are dependent on Hampton's and Vail's being successful on their claim of intentional infliction of emotional distress and malicious prosecution. Because American Family, as the defendant, was not entitled to summary judgment on all of Hampton's and Vail's claims unless it could show an entitlement to judgment as a matter of law on all of the theories pleaded as to each claim, we will address each theory of recovery separately. *Bost,* 116 S.W.3d at 674.

Concerning Hampton's and Vail's claim of intentional infliction of emotional distress, American Family alleged that the undisputed facts established that Coverage A of the policy that it had issued to Carter Enterprises did not cover such a claim. It contended that Coverage A covered only bodily injury and that Hampton and Vail were complaining of a mental injury—that is, emotional distress. It argued, however, that, even if Hampton's and Vail's injury was bodily, it was not caused by an occurrence defined by the policy. It argued further that, even if Hampton's and Vail's bodily injury was caused by an occurrence defined by the policy, their injury fell under the policy's exclusion for "expected or intended injury."

Under well-established law, to be entitled to summary judgment, American

Family, as a defending party, needed only to establish that one of these allegations was true because any one of them would bar Hampton's and Vail's recovery under the insurance contract. *Tonkovich v. Crown Life Insurance Company*, 165 S.W.3d 210, 214 (Mo.App.2005). Hence, if American Family is correct that Hampton and Vail suffered a bodily injury that was not caused by an occurrence defined by the policy, we must affirm the circuit court's summary judgment.

▪ Our consideration of an insurance policy's language is a legal issue. *Missouri Employers Mutual Insurance Company*, 149 S.W.3d at 625. Our review of how an insurance policy has been construed is, therefore, *de novo. Id.* As we do in considering any contract, we interpret an insurance policy according to the plain and ordinary meaning of its language. *Id.* If the policy defines a term, we will defer to that definition so long as the definition is unambiguous. *Id.* If the policy is ambiguous, we resolve doubt in favor of the insured. *Id.*

▪ Section 1 of American Family's policy said:

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### Insuring Agreement

▪ a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

b. This insurance applies to "bodily injury" or "property damage" only if:

1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]"

The policy defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The insurance policy did not define "accident," but Missouri courts have routinely defined the term in the context of insurance contracts as:

An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as to die by an accident.

*Hawkeye–Security Insurance Company v. Davis*, 6 S.W.3d 419, 425 (Mo.App.1999) (quoting *American States Insurance Company v. Mathis*, 974 S.W.2d 647, 650 n. 7 (Mo.App.1998)); *See also West v. Jacobs*, 790 S.W.2d 475, 477 (Mo.App.1990). In other words, "accident" in this context means an injury caused by the insured's negligence. *Wood v. Safeco Insurance Company*, 980 S.W.2d 43, 49 (Mo.App. 1998).

▪ Hampton and Vail, therefore, could not prevail against American Family on their claim that the insurer should cover their judgment for intentional infliction of emotional distress. They established that Carter Enterprises acted intentionally, not negligently. The tort of intentional infliction of emotional distress, as its label implies, requires a showing of intentional or reckless conduct. *Central Missouri Electric Cooperative v. Balke*, 119 S.W.3d 627, 636 (Mo.App.2003). To constitute intentional infliction of emotional distress, Carter Enterprises' conduct had to be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Thornburg v. Federal Express Corporation*, 62 S.W.3d 421, 428

(Mo.App.2001) (citation omitted). Hampton and Vail had to establish that Carter Enterprises' sole intent was to cause them emotional distress. *Id.* But, to be an accident, as American Family's policy defined the term, Carter Enterprises' actions had to take place without "foresight or expectation." The two concepts are mutually exclusive. Hence, the circuit court correctly entered summary judgment for American Family on this claim.

▇ Concerning Hampton's and Vail's claim for malicious prosecution, American Family correctly asserted that the undisputed facts established that Coverage B of its policy did not cover Hampton's and Vail's judgment because the offense was not committed during the period that the policy was effective. The circuit court, therefore, correctly entered summary judgment for American Family.

In the context of insurance, the offense of malicious prosecution occurs when the defendant begins to institute prosecution of charges against the plaintiff. *American Family Mutual Insurance Company v. McMullin,* 869 S.W.2d 862, 864 (Mo.App. 1994). The prosecuting attorney filed charges against Hampton and Vail on December 21, 1999, based on information supplied by State Farm, which, in turn, acted on information supplied by Carter Enterprises. But American Family's coverage of Carter Enterprises was not effective until March 22, 2000. Obviously, the malicious prosecution occurred before American Family's policy was in effect; therefore, American Family was not liable for the judgment against Carter Enterprises.

Nevertheless, Hampton and Vail contend that *McMullin* should not apply because Carter Enterprises did not instigate the prosecution—it merely continued it through the testimony of its investigators. They contend for separate triggering dates for a claim of malicious prosecution based on instigating a lawsuit and a claim of malicious prosecution based on continuing a lawsuit. For support for this proposition, they rely on *King v. Ryals,* 981 S.W.2d 151, 154 (Mo.App.1998).

The *King* court held that a claim of malicious prosecution could be based on the malicious continuation of a prosecution. 981 S.W.2d at 154. This occurs when the defendant continues prosecution although "reasonable grounds existing at the time of instigation are destroyed by subsequently discovered facts[.]" *Id. King,* however, did not decide when the triggering date on a malicious prosecution based on the continuation of the prosecution began, and Hampton and Vail cite no cases on the appropriate trigger date based on the continuation of a malicious prosecution. Assuming, *arguendo,* that Hampton's and Vail's theory of separate triggering dates is correct, *McMullin,* which held that malicious prosecution "is committed upon the institution of the underlying action," logically leads to the conclusion that the triggering date for a malicious prosecution based on the continuation of a lawsuit would be when the defendant first maliciously continued the prosecution. In other words, the triggering date for a malicious prosecution claim based on the continuation of the prosecution would be when the defendant discovered facts that destroyed his reasonable grounds for the prosecution but nevertheless continued the prosecution.

Hampton and Vail allege that Carter first continued the prosecution when Gary Carter testified at the preliminary hearing on February 23, 2000. American Family's policy, however, did not become effective until March 22, 2000. Hence, even assuming, *arguendo,* that Hampton's and Vail's theory of different triggering dates is correct, Hampton's and Vail's claim still fell outside the policy's coverage dates.

Hampton and Vail argue, however, that the triggering date for coverage of a mali-

cious prosecution based on the continuation of malicious prosecution should reflect the "continual nature" of the tort and, as such, if at any point during American Family's coverage, a Carter Enterprises agent took any action that continued the prosecution, coverage should apply. Hampton and Vail cite no authority for this assertion. Rather, *McMullin* leads us to the opposite conclusion.

The *McMullin* court held that, for insurance policy purposes, the offense of "malicious prosecution is committed upon the institution of the underlying action." 869 S.W.2d at 864. That is the point, as the court explained, at which the defendant invoked the judicial process against the victim maliciously and without probable cause, causing the victim's injury. Moreover, Hampton and Vail do not persuade us that the triggering date in the case of malicious prosecution based on instigation of a prosecution should be a single date but a series of dates in the case of a malicious prosecution based on the continuation of a prosecution. Rather, in keeping with *McMullin,* we conclude that the triggering date for coverage should be limited to the date on which the party first continued the malicious prosecution. The circuit court, therefore, did not err in entering summary judgment for American Family on Hampton's and Vail's equitable garnishment claim.

For these reasons, we affirm the circuit court's entry of summary judgment.

VICTOR C. HOWARD, Presiding Judge, concurs.

EDWIN H. SMITH, Judge, participated in oral arguments but was not a member of the court when this opinion was handed down.